NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOHANNA K., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, R.H., *Appellees*.

No. 1 CA-JV 15-0203
FILED 12-22-2015

Appeal from the Superior Court in Yuma County
No. S1400JD20130331
The Honorable Mark Wayne Reeves, Judge

**AFFIRMED**

COUNSEL

Mary Elizabeth Perez, San Diego, CA
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda L. Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

---

**W I N T H R O P**, Judge:

¶1        Johanna M. ("Mother") appeals the juvenile court's order severing her parental rights to her biological child, R.H. ("Child"). Mother does not contest the findings of the statutory ground for severance, but contends the juvenile court erred in concluding severance was in the Child's best interest. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        The Child, born in 2005, came into the care of the Department of Child Safety ("DCS"), was found to be dependent as to both parents due to Mother's mental illness and both parents' neglect, domestic violence, and substance abuse, and was placed with her paternal grandmother and paternal step grandfather (collectively "the Grandparents"), with whom the Child's half-sibling also resided.

¶3        DCS offered Mother an array of services and assistance—such as substance-abuse services, drug testing, psychological counseling (including domestic-violence counseling), parenting classes, parent-aide services, supervised visits, and transportation—geared toward reunification. Mother minimally participated in the services, never tested negative for controlled substances, denied any mental health need, and did not recognize her behaviors could and did negatively impact the Child. Mother was not employed and did not have a residence of her own. The Child was fearful of Mother and was adamant that she did not want to see Mother at all.

¶4        In 2014, DCS moved to sever the parental relationship between Mother[1] and the Child on the ground of cumulative fifteen-month

---

[1]        DCS did not seek to sever the parental rights of the Child's biological father ("Father") and, instead, suggested reunification and permanent guardianship as the concurrent case plan with severance and adoption

out-of-home placement, and asserted severance would serve the best interest of the Child. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(8)(c).[2] Sometime later, DCS moved to dismiss the severance petition, arguing it now believed that severance would not be in the best interest of the Child because the Child would not be adoptable as Father's parental rights were still intact, the Child would lose any inheritance from Mother and social security benefits in the event of Mother's death, and potential concerns for the Child's mental health stemming from interaction with Mother could be addressed by court orders or exercise of guardianship authority by the Grandparents. The court denied DCS's motion to dismiss the severance petition, and continued with the severance proceedings. After a bench trial, the juvenile court found DCS had met its burden of proving the statutory ground and that severance was in the Child's best interest, and severed Mother's parental rights.[3]

**¶5**        Mother timely appealed. We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9; A.R.S. § 8-235(A); and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

**ANALYSIS**

**¶6**        Mother appeals only the portion of the court's order finding that severance was in the Child's best interests.[4] Unless the trial court's

---

because Father had complied to date with the services provided by DCS, and had remained free of controlled substances.

[2]        We cite the current version of the applicable statutes unless revisions material to this decision have occurred since the events in question.

[3]        After the severance, the juvenile court appointed the Grandparents as permanent guardians of the Child as to Father.

[4]        In its answering brief, DCS contends the denial of its motion to dismiss its severance petition is not reviewable on this appeal. We disagree because the denial of that motion was an intermediate order that substantively affected the judgment of severance and involved the merits of the action, i.e., whether severance was in the best interest of the Child. *See* A.R.S. § 12-2102(A) (requiring the appellate court review any intermediate orders involving the merits of the action and necessarily affecting the judgment); *Truck Ins. Exch. v. State Comp. Fund*, 138 Ariz. 116, 118, 673 P.2d 314, 316 (App. 1983) (holding we review such an intermediate order).

findings of fact were clearly erroneous, we will not disturb the court's severance order absent an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004). On appeal, we view the evidence in the light most favorable to upholding the juvenile court's order and will affirm the court's factual findings if "supported by reasonable evidence." *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 93–94, ¶ 4, 210 P.3d 1263, 1264–65 (App. 2009); *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2, 181 P.3d 1126, 1128 (App. 2008).

¶7        Parental rights in the care, custody, and management of their children are fundamental, but not absolute. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24, 110 P.3d 1013, 1018 (2005) (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12, 995 P.2d 682, 684 (2000)). The juvenile court may still sever those rights if it finds clear and convincing evidence of one of the statutory grounds for severance, and finds by a preponderance of the evidence that severance is in the best interest of the children. *See* A.R.S. §§ 8-533(B), -537(B); *Kent K.*, 210 Ariz. at 281–82, 288, ¶¶ 7, 41, 110 P.3d at 1015–16, 1022. Mother does not contest the juvenile court's findings on the statutory ground and, thus, has waived any argument on that ground in this appeal. *See Childress Buick Co. v. O'Connell*, 198 Ariz. 454, 459, ¶ 29, 11 P.3d 413, 418 (App. 2000) (stating that issues not clearly raised in appellate briefs are deemed waived).

¶8        To prove severance is in a child's best interest, DCS must show that severance either provides an affirmative benefit because the child is adoptable or is more stable in an existing placement, or eliminates a threat or detriment to the child if the relationship between the parent and the child is allowed to continue. *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 6–7, 804 P.2d 730, 735–36 (1990); *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6, 100 P.3d 943, 945 (App. 2004).[5] The best interest requirement may be met if, for example, a current adoptive plan exists for the child, or even that the child is adoptable. *JS–500274*, 167 Ariz. at 6, 804 P.2d at 735; *Maricopa Cty. Juv. Action No. JS–501904*, 180 Ariz. 348, 352, 884 P.2d 234, 238 (App. 1994). The juvenile court may also consider evidence that an existing placement is meeting the needs of the child in determining severance is in the child's best interest. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5, 982 P.2d 1290, 1291 (App. 1998). The court may also take into

---

[5]        We note, in presenting her best-interest argument, Mother's counsel relies in part on *Angel S. v. Dep't of Child Safety*, 237 Ariz. 132, 347 P.3d 578 (App. 2015), which was depublished by *Angel* S. *v. Dep't of Child Safety*, 238 Ariz. 84, 357 P.3d 119 (2015) before the filing of her brief.

account that, in most cases, "the presence of a statutory ground [for severance] will have a negative effect on the children." *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23, 312 P.3d 861, 866 (App. 2013) (quoting *Maricopa Cty. Juv. Action No. JS-6831*, 155 Ariz. 556, 559, 748 P.2d 785, 788 (App. 1988)).

**¶9**　　　　This record here supports the juvenile court's finding that severance was in the best interest of the Child. First, severing Mother's parental rights would affirmatively benefit the Child. It would give the Child peace of mind, and she would not be stressed by continuing interactions with Mother; the Child could live in a stable, violence- and drug-free environment, and maintain the existing bond with her half-sibling. Also, the current placement with the Grandparents meet the Child's needs. Second, leaving Mother's parental rights intact would be detrimental to the Child. Mother refuses to acknowledge her mental health problems and her role in causing the strained relationship between her and the Child, or to take measures to repair the relationship. Further, based on the testimony presented at the severance hearing, the court found that there is a substantial likelihood that Mother will not be capable of exercising proper and effective parental care and control in the near future. And, although the Child presently does not need therapy, Mother's further attempts to contact or interact with the Child or to contest the guardianship would likely create further anxiety for the Child, triggering a likely need for professional intervention. And, finally, as noted above, Mother has not contested the existence of a statutory ground for severance; as such, the juvenile court could find that the existence of that ground will also likely negatively affect the Child.

**¶10**　　　　Mother reiterates the same arguments advanced by DCS during the hearing on its motion to dismiss the severance petition, and contends severing her relationship with the Child would not produce any benefit to the Child. She further argues that the severance would in fact be detrimental to the Child because the Child would not be adoptable as Father's parental rights are not severed. She also contends that any problems associated with the Child's fear toward her can be managed within the context of the existing guardianship, and the Child would lose social security death benefits and any inheritance from Mother. The juvenile court was not persuaded by these arguments, and this court is not persuaded either.

**¶11**　　　　First, the possibility of adoption for the Child has not been foreclosed because Father's parental rights may be severed in the future and the Grandparents are willing to adopt the Child if necessary. Moreover,

even if an adoption plan is not currently in place for a child or the child is not adoptable, severing parental rights of the child's parent can still serve the best interest of the child because the availability of adoption is only one of the factors to consider in the process of weighing the benefits of severance against the detriments from continuation of the parent-child relationship. *Pima Cty. Juv. Action No. S-2460*, 162 Ariz. 156, 157–58, 781 P.2d 634, 635–36 (App. 1989). Second, Grandparents are currently the Child's appointed guardians and the Child has thrived at the current placement at the Grandparents' home. With severance of Mother's parental rights, the Child can remain in a stable, permanent environment without worrying whether and when Mother would return. Without severance, it is unlikely that the Child's fear toward Mother could realistically be eliminated or effectively managed, either in continuing juvenile court proceedings or via guardianship proceedings in the probate court. Third, the argument of losing social security benefits or a potential inheritance is tenuous and unpersuasive; such a potential loss exists in every severance proceeding.

¶12　　　　Mother argues that a ten-year-old girl may understandably have emotional issues with her mother, but that the Child's feelings toward her may change in the future, and there is no evidence of physical abuse or emotional cruelty that justifies the permanency of severance. To the contrary, there is no evidence in the record that shows Mother has acknowledged her role and responsibility in creating and perpetuating the strained relationship between her and the Child, or that Mother has taken any steps to improve the relationship. The Child is adamant in her desire not to see Mother ever again. Without any behavioral changes from Mother, there is nothing in the record to suggest that the Child's feelings toward Mother will likely change. The statutory ground for severance was fifteen months out of home placement; accordingly, the absence of documented physical or emotional abuse is not a compelling factor in the court's best-interest analysis.

¶13　　　　Mother also implies the juvenile court unfairly severed her parental rights while leaving Father's rights intact, pointing out that the same ground for severance exists as to Father. This assertion is not supported by the record. Although Father is not ready to resume his parental duties, he has, unlike Mother, successfully completed the services provided by DCS; accordingly, the statutory ground of fifteen-month out-of-home placement does not yet apply to Father. In addition, Father and the Child have a good and stable relationship, one that the Child currently wishes to maintain.

**CONCLUSION**

**¶14** The juvenile court did not abuse its discretion in finding that the Child's best interest would be served by severing Mother's parental rights, and we affirm that order.



Ruth A. Willingham · Clerk of the Court
FILED: ama